**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SALIF DIA,

Petitioner,

v.

MARKWAYNE MULLIN, *Secretary of the U.S. Department of Homeland Security*, et al.,

Respondents.

No. 4:26-CV-01418

(Chief Judge Brann)

**MEMORANDUM OPINION**

**OCTOBER 2, 2026**

Salif Dia has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") for over a year.[1] Dia is currently detained at the Pike County Correctional Facility located within the Middle District of Pennsylvania.[2] On May 25, 2026, Dia filed a petition for a writ of habeas corpus, asserting that his post-removal detention had become unconstitutionally prolonged.[3] This Court granted that petition and directed the Government to either release Dia or provide him with an individualized bond hearing at which he may present evidence.[4]

1 Doc. 1, at 6.
2 *Id*. at 4.
3 *Id*.
4 Doc. 8.

On June 22, 2026, an immigration judge ("IJ") held a bond hearing and denied Dia's bond request.[5] Dia now moves for this Court to enforce its judgment.[6] A review of the available evidence demonstrates to the Court that, while the bond hearing appears facially to have been individualized, the analysis provided by the IJ was insufficient to satisfy the requirements of the Due Process Clause. Consequently, the Court will grant Dia's motion.

## I. BACKGROUND

Dia, a citizen and native of the Republic of Senegal, entered the United States of America in November of 2023.[7] On September 25, 2025, Dia was taken into ICE custody during a routine check-in, where he has remained since that date.[8] On June 12, 2026, this Court held that Dia was being improperly detained under 8 U.S.C. § 1225(b) and that denial of a bond hearing violated his due process rights.[9] Consequently, this Court ordered that the Government "provide Dia with an individualized bond hearing at which he may present evidence."[10] At the time of the Court's order, Dia was subject to a removal order that had been stayed by the United States Court of Appeals for the Third Circuit.[11]

---

5 Doc. 10, at 2.
6 Doc. 9.
7 Doc. 4-1, at 1-2.
8 *Id.* at 2.
9 Doc. 7.
10 Doc. 8.
11 Doc. 1, at 2.

On June 22, 2026, an IJ held a bond hearing and denied bond.[12] At that hearing, the IJ determined that Dia would not be a danger if released on bond.[13] However, the IJ concluded that he would be a flight risk.[14] The IJ noted several factors relevant to his analysis: (1) Dia's undocumented entry into the United States; (2) his recent entry into the United States; (3) the lack of submitted employment history; (4) his pending removal order; (5) his non-compliance with the removal order; and (6) the low likelihood of success in his pending application for relief.[15] For his part, Dia submitted sponsor documents from his aunt, and support letters from family and non-family friends; furthermore, Dia offered to ameliorate any flight risk concerns by wearing a GPS monitoring device.[16]

Dia also explained his non-compliance with the pending removal order. Dia clarified that when he had been brought to the airport for removal proceedings to Uganda on May 21, 2026, he refused to comply due to confusion over whether the Third Circuit had stayed his removal order.[17] The Third Circuit would stay the removal order the day *after* the incident.[18] Dia also questioned whether the Asylum Cooperative Agreement (ACA) with Uganda was even operative at the time given

---

12 Doc. 10, at 2-3.
13 Doc. 10-3, at 7.
14 *Id*. at 8.
15 *Id*. at 7-8.
16 *Id*. at 7. At the time of his bond hearing, Dia had been litigating a pending motion to reopen his removal.
17 *Id*. at 4-6.
18 *Id*. at 3-4.

the World Health Organization's declaration of an Ebola outbreak in the region.[19] Nevertheless, the IJ relied on Dia's refusal to comply with the removal order as a reason to find that Dia posed a flight risk.[20]

On June 30, 2026, Dia filed this motion to enforce the Court's prior judgment.[21] Dia asserts that the bond hearing failed to satisfy neither this Court's Order nor the Due Process Clause of the United States Constitution when the IJ failed to provide an individualized assessment in relation to the conclusion that Dia presented a flight risk.[22] Secondly, pursuant to the Supreme Court's holding in *Zadvydas v. Davis*, Dia argues that prolonged detention without foreseeable deportation is presumptively unreasonable.[23]

In opposition, Respondents contend that this Court lacks jurisdiction to consider Dia's motion and, in any event, the motion fails on its merits.[24] Respondents rest their jurisdiction argument on two grounds: first, on 8 U.S.C. § 1226(e), which they argue strips this Court of jurisdiction;[25] and second, the requirement that Dia exhaust his administrative remedies.[26] Separately, Respondents also argue that the

---

19 *Id*. at 4-6.
20 *Id*. at 7-8.
21 Doc. 9.
22 *Id*. at 2-3.
23 *Id*. at 3-4; *Zadvydas v. Davis*, 533 U.S. 678 (2001).
24 Doc. 10.
25 *Id*. at 3-4.
26 *Id*. at 5-6.

bond hearing was sufficiently individualized to comport with due process and the Court's prior Order. [27]

On August 11, 2026, Respondents appealed the Court's June 12, 2026 Order granting Dia's habeas petition.[28] Accordingly, on August 14, 2026, the Court stayed consideration of the instant motion pending the disposition of the appeal.[29] On September 14, 2026, the Third Circuit dismissed Respondents' appeal pursuant to Fed. R. App. P. 42(b).[30] The Court now lifts its prior stay, rendering this matter ripe for disposition. For the reasons discussed below, the motion will be granted.

## II. DISCUSSION

### A. Jurisdiction

The Government first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[31] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[32]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to

---

[27] *Id*. at 7-8.
[28] Doc. 12.
[29] Doc. 14.
[30] Doc. 15.
[31] Doc. 10 at 3-4.
[32] 8 U.S.C. § 1126(e).

impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[33] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[34]

And beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[35] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[36] Dia challenges both the constitutional sufficiency of the bond hearing and maintains that the hearing failed to comply with the Court's Order granting his petition for a writ of habeas corpus.[37] Both arguments fall within exceptions to § 1226(e)'s bar on review of a bond determination, and that Section therefore does not divest this Court of jurisdiction to consider Dia's motion.

The Government next argues that Dia has failed to exhaust his administrative remedies related to the bond hearing, and therefore this Court should decline to

---

33 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

34 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

35 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

36 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

37 *See* Doc. 9.

review the motion.[38] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[39]

The Court need not determine whether exhaustion of administrative remedies is required because, even when exhaustion is necessary, courts will not enforce that requirements if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[40] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[41]

Assuming that Dia was required to exhaust his administrative remedies, that requirement would be excused here for two reasons. First, as outlined above, exhaustion would be futile since the Board of Immigration Appeals ("BIA") likely

---

[38] Doc. 10 at 5-6.
[39] *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).
[40] *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).
[41] *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

would not take up the constitutional question. Second, as discussed below, the IJ's actions violated Dia's due process rights. Accordingly, the Court finds that Dia was not required to exhaust his administrative remedies, and it has jurisdiction to consider the merits of this motion.

### B. Merits

Turning to the merits, Dia asserts that the bond hearing was deficient for two reasons. First, Dia asserts that the IJ failed to provide an individualized assessment before concluding that he posed a flight risk.[42] Secondly, pursuant to the Supreme Court's holding in *Zadvydas*, Dia argues that prolonged detention without foreseeable deportation is presumptively unreasonable.[43] Respondents counter by stating that the IJ conducted an individualized bond hearing in accordance with the Court's Order.[44]

First, the Court addresses Dia's due process argument. "[T]hroughout all phases of deportation proceedings, petitioners must be afforded due process of law."[45] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[46] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the

---

[42] Doc. 9, at 3.
[43] *Id*. at 3-4.
[44] Doc. 10, at 7-8.
[45] *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
[46] *Id.* (internal quotation marks omitted).

decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[47] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[48]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[49] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[50] "However, to the extent that Petitioner challenges how the IJ weighed the evidence presented, such an argument "challenges a discretionary determination" that the Court may not review.[51]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[52] "'Mechanistic reliance

---

47 *Id.* (brackets and internal quotation marks omitted).
48 *Id.* (internal quotation marks omitted).
49 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F. 3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).
50 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).
51 *Ghanem*, 2022 WL 574624, at *2.
52 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

on factors that are common to all § 1226([a]) detainees will not suffice.'"[53] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including but not limited to: whether the petitioner has a fixed address, the strength of the petitioner's family ties to the United States, and the petitioner's employment history.[54]

Here, Dia's bond hearing was constitutionally deficient because the IJ failed to provide an individualized determination related to Dia's flight risk. The IJ relied on the following reasons to find that Dia was a flight risk: (1) Dia's undocumented entry into the United States; (2) his recent entry into the United States; (3) the lack of submitted employment history; (4) his pending removal order; (5) his non-

---

[53] *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

[54] *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit have held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors may be considered by the IJ. *See Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026).

compliance with the removal order; and (6) the low likelihood of success in his pending application for relief.[55]

First, Dia's undocumented entry into the United States is easily dismissed as an insufficient ground. Undocumented entry is a factor common to nearly all individuals receiving a bond hearing pursuant to § 1226(a), and therefore cannot alone support the denial of bond.[56] In other words, it is too generalized to be an independent basis for denial. So too for Dia's pending removal order—the existence of a removal order is a "'mechanistic factor' common to virtually all immigration detainees," and cannot alone support a finding of risk of flight.[57] While both undocumented entry and pending removal orders are insufficient on their own, they are nevertheless facially valid factors that an IJ may consider in tandem with other valid factors.[58] Here however, the IJ failed to rely on any other valid considerations.

For instance, Dia's noncompliance with the removal order did not support the IJ's flight risk determination. True, noncompliance is a relevant factor when determining flight risk.[59] However, the unique circumstances of Dia's noncompliance are a far cry from the willful evasion of a final removal order that

---

55 Doc. 10-3, at 7-8.

56 *Santos*, 2020 WL 4530728, at *3.

57 *Id.* at *4 (quoting *Wilkins*, 2018 WL 3388032, at *3).

58 *Guerra*, 24 I. & N. Dec., at 40; *see also United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 693 (D. Md. 2025) (noting that there is limited, if any, authority to suggest "that a brief residency, with less established ties to the community, is dispositive. Therefore, this [factor] must be weighed in the context of other considerations.").

59 *Guerra*, 24 I. & N. Dec., at 40; *Matter of A-L-S-*, 29 I. & N. Dec. 794, 797 (BIA 2026) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021)).

most clearly supports a flight risk finding. As with other factors, an assessment of noncompliance requires engaging with the underlying circumstances to truly render an individualized determination.[60] Here, Dia's refusal to comply occurred while ongoing appellate litigation contested the enforceability of his removal and a documented Ebola outbreak spread through Uganda. Such noncompliance—while remaining within the custody of DHS and complying with all other obligations—cannot be interpreted as an inclination to flee from or violate future immigration proceedings. While these circumstances did not give Dia an independent legal right to disobey a removal order, they strongly suggest a specific, temporary concern about the conditions of that particular removal action. Put differently, Dia's specific circumstances rebut a general determination that he would fail to comply with future immigration proceedings, especially given that Dia's detainment began from a voluntary ICE check-in.[61]

But the IJ only noted that the circumstances surrounding the noncompliance were "slightly more unorthodox than some matters."[62] The IJ asked no specific questions regarding the removal and only received argument when asking for "anything else" on the record.[63] Without any explanation as to why the IJ discounted

60 *Segura Serrano v. Scott*, 2:26-CV-01268, 2026 WL 1674357, at *8 (W.D. Wash. May 26, 2026) (identifying alternative explanations for a detainee's refusal to comply and finding that the IJ erred by failing to connect the detainee's noncompliance to the purported flight risk).

61 Doc. 10-3, at 5, 7.

62 *Id*. at 6.

63 *Id*. at 4.

these circumstances, the Court must conclude that the IJ failed to consider them and thereby failed to conduct an individualized assessment.

Similarly, the IJ failed to connect Dia's low likelihood of success on his pending motion to reopen to any specific risk of flight. Without further explanation by the IJ, the Court assumes the IJ relied on Respondents' contention that any likelihood of relief on Dia's motion was speculative and unlikely.[64] Indeed, Dia was left with the succinct, one-line explanation that the IJ "[had] concerns about the likelihood of relief in this case."[65] By failing to "explain how the weaknesses he perceived in [Dia's] claim for relief . . . demonstrate[d] flight risk," the IJ could not properly interpret Dia's low likelihood of relief as a factor favoring a flight risk finding.[66] Without more, such as additional—or any—questioning regarding Dia's pending motion to reopen, or further elaboration by the IJ, this examination cannot be the individualized assessment that Dia is entitled to.[67]

---

64 *Id*. at 6.

65 *Id*. at 8.

66 *Moreno Flores v. Santacruz*, 5:26-CV-03393, 2026 WL 2691657, at *4. (C.D. Cal. Sept. 14, 2026).

67 The Court acknowledges that when considering likelihood of relief on appeal or a motion to reopen, an IJ need not conduct a full merits review of the issue itself. *Chen v. Rose*, No. 26-CV-0501, 2026 WL 473347, at *2 (E.D. Pa. Feb. 19, 2026). Nor is it the role of this Court to do so. However, the IJ's consideration must rest on sufficient factual findings specific to the detainee rather than a conclusory characterization of the claims as speculative or unlikely. *Santacruz,* 2026 WL 2691657, at *4; *see also Chen*, 2026 WL 473347, at *2 (upholding an IJ's determination based on specific facts presented on the record and governing laws that presumptively barred the detainee's asylum claim). An appellate posture or pending motion to reopen does not eliminate the requirement that the IJ's reasoning must be "specific to the Petitioner, based on facts presented by the parties, and [have] a rational basis." *Chen*, 2026 WL 473347, at *2; *see also A-L-S-*, 29 I. & N. Dec. at 798 (noting that IJs "should [ ]assess flight risk based on the totality of the record, including the existence *and substance of any*

Turning to the IJ's remaining reasons for bond denial, Dia's lack of employment history is similarly unavailing. While again facially valid, the IJ did little more than reference the lack of submitted employment history as a supporting factor. The IJ failed to examine or ask Dia's counsel about any relevant documents before citing it as a reason to deny bond. However, any relevance that employment history documents would provide was plainly offered in Dia's submitted documents, which, as the IJ recognized, included documents from his family members and letters of support from non-family friends.[68] In particular, the IJ acknowledged that Dia submitted sponsorship documents and "could live with [his] aunt going forward," which renders any lack of submitted employment history as minimally probative at best.[69]

With all other reasons addressed and dismissed, only Dia's recent entry into the United States remains. However, as other courts have recognized, recent entry cannot alone justify denial of bond. "The Court is unaware of authority suggesting that a brief residency, with less established ties to the community, is dispositive. Therefore, this [factor] must be weighed in the context of other considerations."[70] To find otherwise would be to create a *per se* rule that would mandate detention for

---

*applications for relief* . . . and the extent to which any asserted forms of relief meaningfully bear on the respondent's likelihood of attendance at future proceedings and compliance with future orders.") (emphasis added).

68 Doc. 10-3, at 3-4.

69 *Id*. at 4.

70 *Mejias-Mejias*, 771 F. Supp. 3d at 693.

those who had resided in the United States for less than a certain period of time. Such a rule would directly contravene the guarantee that all detainees receive an individualized determination. In the absence of any other valid grounds, Dia's recent entry into the United States cannot singlehandedly support the IJ's determination.

In sum then, the IJ's flight risk finding was supported by no legitimate evidence or considerations. While this Court may not second guess an IJ's determination, at the same time an IJ may not deny bond for facially incorrect reasons. Here, the absence of any legitimate support for the IJ's decision means "the exercise of discretion in denying bond was so arbitrary that it . . . offend[ed] fundamental tenets of due process."[71]

Consequently, the Court must conclude that the bond hearing below violated Dia's due process rights and failed to comply with this Court's Order. With respect to Dia's alternative argument that prolonged detention without foreseeable deportation is presumptively unreasonable under *Zadvydas*, the Court notes that Dia's due process argument is sufficient for relief in this case. The Court accordingly declines to address Dia's argument on prolonged detention. The Court will therefore grant Dia's motion.

---

[71] *Romero v. Ogle*, No. 1:21-CV-01192, 2021 WL 8362027, at *3 (M.D. Pa. Nov. 12, 2021) (quoting *Serrano-Vargas v. Lowe*, No. CV 3:17-0801, 2019 WL 3003382, at *2 (M.D. Pa. July 10, 2019)).

### C. Remedy

Having concluded that Dia's bond hearing failed to comply with the Court's Order and was constitutionally deficient, this Court must determine what remedy is appropriate. Respondents have "now violated [Dia's] due process rights twice: first when [Respondents] initially detained him unlawfully under § 1225(b), and then again when [Respondents] deprived him of a constitutionally adequate bond hearing."[72] Moreover, Dia has been detained by ICE for over a year, all of which indicates that "release is the only just remedy."[73] The Court therefore finds that the appropriate remedy in this matter is to direct that Respondents release Dia from custody.

## III. CONCLUSION

For the foregoing reasons, Dia's motion to enforce the judgment will be granted, and he will be ordered released from custody.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
Chief United States District Judge

---

72 *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *8 (D.N.J. Mar. 23, 2026).
73 *Id.* at *11.